UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENEE G. SCARBOROUGH,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:15-cv-0146 DB<br><br><br><br>ORDER |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment.[1] Plaintiff argues that the ALJ's treatment of the medical opinion evidence and subjective testimony constituted error. For the reasons explained below, plaintiff's motion is granted, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for the payment of benefits.

PROCEDURAL BACKGROUND

In December of 2011 or January of 2012, plaintiff filed applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act alleging disability beginning

---

[1] Both parties have previously consented to Magistrate Judge jurisdiction in this action pursuant to 28 U.S.C. § 636(c). (See ECF Nos. 10 & 19.)

1

on May 22, 2008. (Transcript ("Tr.") at 11, 177-89.) Plaintiff's applications were denied initially, (id. at 109-17), and upon reconsideration. (Id. at 122-32.)

Thereafter, plaintiff requested a hearing which was held before an Administrative Law Judge ("ALJ") on April 10, 2013. (Id. at 29-69.) Plaintiff was represented by an attorney and testified at the administrative hearing. (Id. at 29-30.) In a decision issued on May 31, 2013, the ALJ found that plaintiff was not disabled. (Id. at 23.) The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2010.
>
> 2. The claimant has not engaged in substantial gainful activity since May 22, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: major depressive disorder; anxiety; and substance addiction (alcohol) (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform simple (as defined in the DOT as SVP levels 1 and 2), routine and repetitive tasks; can work in a low stress job consisting of only occasional decision making and occasional changes in the work setting; can have only occasional interaction with the general public; and can work around coworkers throughout the day, but with only occasional interaction with coworkers.
>
> 6. The claimant is capable of performing past relevant work as a warehouse laborer. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from May 22, 2008, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Id. at 13-22) (footnotes omitted).

On November 19, 2014, the Appeals Council denied plaintiff's request for review of the ALJ's May 31, 2013 decision. (Id. at 1-3.) Plaintiff sought judicial review pursuant to 42 U.S.C.

§ 405(g) by filing the complaint in this action on January 16, 2015.  (ECF No. 1.)

## LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)).  If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

> Step one:  Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

In his[2] pending motion plaintiff argues that the ALJ committed the following two principal errors: (1) the ALJ's treatment of the medical opinion evidence constituted error; and (2) the ALJ's treatment of the subjective testimony constituted error. (Pl.'s MSJ (ECF No. 17) at 15-27.[3])

**I.      Medical Opinion Evidence**

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ." Lester, 81 F.3d at 830. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." (Id. at 831.) Finally, although a

---

[2] Plaintiff is transgender, considers himself to be male, and will be referred to as such in this decision. (Pl.'s MSJ (ECF No. 17) at 1.)

[3] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

4

treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

### A. Dr. David Scott

Plaintiff argues that the ALJ's treatment of Dr. Scott's opinion constituted error. (Pl.'s MSJ (ECF No. 17) at 16-19.) As defendant correctly points out, however, Dr. Scott did not provide an opinion. (Def.'s MSJ (ECF No. 25) at 6.) "'In disability benefits cases . . . physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability—the claimant's ability to perform work.'" Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)).

Here, Dr. Scott provided neither. Instead, plaintiff takes issue with the ALJ's characterization of Dr. Scott's treatment record. However, it cannot be said that the ALJ did not thoroughly discuss Dr. Scott's treatment record.[4] (Tr. at 18.)

### B. Dr. Wendy Weiss

Plaintiff argues that the ALJ's treatment of Dr. Weiss' opinion constituted error. (Pl.'s MSJ (ECF No. 17) at 19-24.) In this regard, Dr. Weiss examined plaintiff on January 18, 2013. (Tr. at 410.) On February 13, 2013, Dr. Weiss provided a "Psychological Evaluation." (Id. at 410-15.) On February 15, 2013, Dr. Weiss completed a Medical Source Statement Concerning the Nature and Severity of an Individual's Mental Impairment form. (Id. at 416-20.)

The ALJ's decision discussed Dr. Weiss' opinion, stating, in part:

> At the examination, the claimant was reported to be generally cooperative and, at time, irritable and impatient, the claimant was unsure of any recent current events, the claimant made errors repeating digits beginning at four numbers, and was unable to complete serial threes. The claimant's short-term memory was limited, the claimant had some capacity for abstract thinking, and the claimant's calculation abilities were limited. The claimant reported hearing frogs, demonic voices, and derogatory voices. The

---

[4] As discussed below, this is not to say that the ALJ's discussion of Dr. Scott's treatment record was without error.

5

> claimant's mood was described as tired and the claimant reported feeling down and depressed on a daily basis. Based on the evaluation, Dr. Weiss diagnosed the claimant with major depression, recurrent, moderate to severe, and polysubstance dependence in remission, and assessed a GAF score of 40. She opined the claimant's ability to understand and memorize ranged from not significantly limited to moderately limited, the claimant's ability to sustain concentration and persistence ranged from not significantly limited to markedly limited, the claimant's ability to socially interact ranged from not significantly limited to moderately limited, and the claimant's ability to adapt ranged from not significantly limited to moderately limited. Dr. Weiss further opined the claimant would be unable to complete a workday more than three or four times per month.

(Tr. at 19) (citations omitted).

The ALJ afforded Dr. Weiss' opinion only "little weight." (Id.) In this regard, the ALJ found that the opinion was "inconsistent with the overall objective record" which established that plaintiff's symptoms "improved and stabilized with routine, conservative treatment, medication compliance, attendance at therapy sessions, and abstinence from alcohol use." (Id. at 19-20.) This statement, however, is flawed in several respects.

First, that a patient's symptoms improve and/or stabilize with treatment does not mean that the impairments would no longer be present in a work setting. See Hutsell v. Massanari, 259 F.3d 707, 712 (8th Cir. 2001) ("We also believe that the Commissioner erroneously relied too heavily on indications in the medical record that Hutsell was 'doing well,' because doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity."); Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001) ("That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.").

Moreover, a review of plaintiff's medical records reveals that he continued to experience serious impairments during the course of his treatment, including complaints of "trouble sleeping," "+paranoia," feeling "sad," "trouble staying asleep," feelings of being in a "dark space," "voices tell[ing] him to walk outside into the middle of the street," and other auditory hallucinations. (Tr. at 313, 315, 324, 327, 332, 382, 404.) During this period Dr. Scott found that

plaintiff's Global Assessment of Functioning ("GAF") ranged between 45-50.[5] (Id. at 300, 315, 336, 408, 426.)

> Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.

Garrison, 759 F.3d at 1017.

The ALJ's assertion that claimant's treatment was routine and/or conservative is also erroneous, as it is entirely unsupported. In this regard, the ALJ's decision acknowledged that plaintiff's treatment included medication and therapy sessions. Aside from perhaps psychiatric hospitalization, it is not clear that any further treatment was even available to the plaintiff.

Moreover, his medications included Buspar, Elavil, Remeron, Zolfot, Risperdal, Seroquel, and amitriptyline. (Tr. at 326, 336, 359.) "Courts specifically have recognized that the prescription of several of these medications connotes mental health treatment which is not 'conservative,' within the meaning of social security jurisprudence." Carden v. Colvin, No. CV 13-3856-E, 2014 WL 839111, at *3 (C.D. Cal. Mar. 4, 2014) (listing cases); see also Johnson v. Colvin, No. ED CV 13-1476-JSL (E), 2014 WL 2586886, at *5 (C.D. Cal. June 7, 2014) ("Courts specifically have recognized that the prescription of . . . Seroquel connotes mental health treatment which is not 'conservative,' within the meaning of social security jurisprudence.").

The ALJ also rejected Dr. Weiss' opinion because it found that plaintiff was disabled as of May 22, 2008, despite the fact that there was no medical evidence prior to September 29, 2011. (Tr. at 20.) In this regard, the ALJ found that "[t]his suggests Dr. Weiss primarily relied upon the

---

[5] A GAF score represents a present rating of overall psychological functioning on a scale of 0 to 100. See Diagnostic and Statistical Manual of Disorders, at 34 (Am. Psychiatric Ass'n, 4th Ed. 2000) ("DSM-IV"); see also Keyser v. Commissioner Social Sec. Admin., 648 F.3d 721, 723 (9th Cir. 2011) ("A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment."). A GAF score in the range of 41 to 50 denotes: "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV at 34. Moreover, "GAF scores are typically assessed in controlled, clinical settings that may differ from work environments in important respects." Garrison, 759 F.3d at 1003.

7

claimant's subjective statements in forming an opinion." (Id.)

However, as noted below, the ALJ's decision fails to provide clear and convincing reasons for discrediting plaintiff's testimony that he has been disabled since May 22, 2008. Nonetheless, even if the ALJ's reasons for discrediting plaintiff's subjective testimony were not erroneous, it is not legitimate to reject Dr. Weiss' entire opinion—which was based on her review of plaintiff's medical records and her own examination—based solely on a dispute over the appropriate disability onset date.

In rejecting Dr. Weiss' opinion, the ALJ also found that Dr. Weiss' assessed GAF score of 40 was "inconsistent with the claimant's mental health treatment history" simply because plaintiff had "not been referred for any psychiatric hospitalizations during the alleged period." (Id.) A GAF of 40, however, indicates "[s]ome impairment in reality testing or communication . . . or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood . . . ." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. Text Revision 2000). In this regard, that plaintiff's GAF was 40 and he was not referred for psychiatric hospitalization is not in any way inconsistent. Moreover, as noted above, plaintiff's treating physician found that plaintiff's GAF score ranged between 45-50, scores which indicate the plaintiff was suffering from serious symptoms. Such a difference between Dr. Scott's scores and Dr. Weiss' scores is not so significant as to call into question Dr. Weiss' entire opinion.

Finally, the ALJ rejected Dr. Weiss' opinion because the "form completed . . . lends itself to indicate that an individual is disabled based on the definitions of the rating terms," and because it was purportedly "unclear from the form as to whether Dr. Weiss actually considered the rating definitions when [she] completed this form." (Tr. at 20.) In this regard, the ALJ stated that Dr. Weiss found plaintiff unable to maintain concentration for 5 to 15 minutes but plaintiff was able to give a personal history and participate in mental status examination, "which presumably took longer than 5 to 15 minutes." (Id.)

Dr. Weiss' examination, however, reflects that plaintiff "became irritable and impatient," and "demonstrated difficulty in terms of [his] capacity for attention and concentration . . . ." (Tr.

at 413.)  Moreover, in selecting ratings Dr. Weiss was tasked with translating the results of her examination into an opinion as to plaintiff's ability to function with respect to work-related abilities.  (Id. at 416.)  Her examination was likely conducted in a controlled, clinical setting that would differ from any work environment in important respects.

For the reasons stated above, the court finds that the ALJ failed to offer specific and legitimate, let alone clear and convincing, reasons supported by substantial evidence in the record for rejecting Dr. Weiss' opinion.[6]

Accordingly, plaintiff's claim that the ALJ's treatment of the medical opinion evidence constituted error is granted as to the ALJ's treatment of Dr. Weiss' opinion.

## II. Subjective Testimony

Plaintiff argues that the ALJ's treatment of plaintiff's testimony and the testimony of his mental health case worker constituted error.  (Pl.'s MSJ (ECF No. 17) at 24-27.)

### A. Plaintiff's Testimony

The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis.  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.  The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.  Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so . . . .

---

[6] In discussing Dr. Weiss' opinion, the ALJ's decision "emphasized that the claimant underwent the examination . . . through an attorney referral in an effort to generate medical evidence," and stated that "the context in which it was produced cannot be entirely ignored." (Tr. at 19.)  "[I]n the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it." Reddick v. Chater, 157 F.3d 715, 726 (9th Cir. 1998).

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). "The clear and convincing standard is the most demanding required in Social Security cases." Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id.

Here, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not "entirely credible for the reasons explained in this decision." (Tr. at 17.)

In this regard, the ALJ found that plaintiff's credibility was diminished because the discontinuation of his last job was the result of a group termination. (Id.) The ALJ explained that this "suggests the claimant could have continued working after the alleged onset date" because plaintiff did not seek "mental health treatment until September 2011." (Id.) "In fact, through the second quarter of 2011, the claimant received unemployment benefits." (Id.)

The Ninth Circuit has "particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because 'it is a

10

questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1299-300 (9th Cir. 1999) (quoting Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996)). Moreover, "while receipt of unemployment benefits can undermine a claimant's alleged inability to work fulltime," a plaintiff's allegations of disability are only inconsistent with the plaintiff's testimony if the plaintiff "held himself out as available for full-time or part-time work." Carmickle v. Commissioner, Social Sec. Admin., 533 F.3d 1155, 1161-62 (9th Cir. 2008)

Here, plaintiff testified that after he was terminated his drinking became worse, he "was depressed," and "was in the bed all the time." (Id. at 35.) Since that time plaintiff's condition deteriorated. (Id. at 36.) Thereafter, plaintiff began receiving mental health treatment and was encouraged by his treatment providers to explore disability benefits. (Tr. at 314, 317, 329.) In this regard, it appears that plaintiff was terminated, his conditioned worsened, he sought treatment, and became aware of the possibility that his conditioned had worsened to such a degree that he was disabled and had been for some time. That is consistent with the evidence of record and plaintiff's testimony. Accordingly, the court does not find this to be a clear and convincing reason for rejecting plaintiff's testimony.

The ALJ's decision also found that the evidence of record did not support claimant's testimony. (Id. at 17.) The ALJ's decision then provides a lengthy recitation of the medical and opinion evidence but—aside from again noting that plaintiff alleged disability onset of May 22, 2008, but did not seek treatment until September 29, 2011—fails to explain what evidence contradicted plaintiff's testimony.[7]

Accordingly, the court finds that the ALJ failed to offer specific, clear, and convincing reasons for rejecting plaintiff's testimony.

### B.     **Mental Health Case Worker**

In addition to evidence from acceptable medical sources, a plaintiff may offer opinions from "other sources" to establish the severity of impairments. See 20 C.F.R. §§ 404.1513(d),

---

[7] Moreover, it appears to the court that plaintiff's testimony is consistent with the evidence of record.

416.913(d).  However, the ALJ may afford less weight to other source opinions.  Nonetheless, the ALJ may only reject evidence from an "other source," if the ALJ gives a germane reason for doing so.  See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012); Bain v. Astrue, 319 Fed. Appx. 543, 546 (9th Cir. 2009); Petty v. Colvin, 954 F.Supp.2d 914, 926 (D. Ariz. 2013) ("An ALJ is free to discount testimony from other sources, but as the Commissioner concedes, he must give reasons germane to each witness for doing so.").

Here, plaintiff's mental health case worker, Bruce Jones, completed a Function Report-Adult-Third Party form on March 15, 2012.  (Tr. at 220.)  However, Jones also testified at the April 10, 2013 administrative hearing.  (Id. at 52-59, 64-65.)  Jones testified that he had contact with plaintiff generally once a week since January of 2012.  (Id. at 52-53.)  Jones worked on plaintiff's treatment plan, spoke with plaintiff's group counseling facilitators, and with the plaintiff.  (Id. at 52-55.)  On roughly 10 occasions over the last year, plaintiff's condition deteriorated to the point that Jones had to personally transport plaintiff to the "mental health facility."  (Id. at 17, 55.)  Jones opined that plaintiff had problems with "his temperament and anxiety," and "lack of concentration . . . ."  (Id. at 58.)

The ALJ, however, afforded Jones' opinion, "little weight."  (Id. at 20.)  In this regard, the ALJ found that Jones' statements were similar to those of the plaintiff and that "there exist good reasons for questioning the reliability of the claimant's subjective complaints."  (Id.)  As noted above, however, the ALJ's decision failed to offer specific, clear, and convincing reasons for rejecting plaintiff's testimony.

The ALJ also stated that because Jones was not an acceptable medical source his statements were "less persuasive on those same issues than medical opinions." (Id.) The ALJ's decision, however, did not grant anything more than "little weight," to the medical opinions of record. (Id. at 19-20.) Moreover, Jones' statements appear consistent with the record of plaintiff's treating physician, Dr. Scott, and with the opinion of the examining physician Dr. Weiss.

Finally, the ALJ noted that plaintiff's statements were "not entirely supported by the clinical or diagnostic medical evidence," and thus Jones' statements should be rejected for "the

same reasons . . . ." (Id.) As noted above, this finding is inconsistent with plaintiff's treatment records, which routinely found he suffered from serious symptoms, with his non-conservative treatment, and with the opinion of the only examining physician, Dr. Weiss.

For the reasons stated above, the court finds that the ALJ's decisions failed to provide germane reasons for rejecting Jones' testimony. Accordingly, the court finds that plaintiff is entitled to summary judgment on his claim that the ALJ's treatment of the subjective evidence constituted error.

## CONCLUSION

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020. Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin.., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the record contains ample treatment records, the opinion of an examining physician, plaintiff's testimony, other source testimony, and the testimony of a Vocational Expert ("VE"). In this regard, the court finds that the record has been fully developed and further administrative proceedings would serve no useful purpose.

As set forth above, the ALJ has failed to provide legally sufficient reasons for rejecting multiple items of evidence.  Moreover, if the improperly discredited evidence were credited as true, the ALJ would be required to find plaintiff disabled on remand.  In this regard, at the April 10, 2013 hearing, the ALJ asked the VE if the restrictions identified in Dr. Weiss' opinion would "eliminate jobs at all exertion levels."  (Tr. at 64.)  The VE testified that such restrictions "would be preclusive of any and all" jobs.  (Id.)  Finally, the record as a whole creates no serious doubt that the claimant is, in fact, disabled within the meaning of the Social Security Act.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 17) is granted;

2. Defendant's cross-motion for summary judgment (ECF No. 25) is denied;

3. The Commissioner's decision is reversed;

4. This matter is remanded for the immediate award of benefits; and

5. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

Dated:  March 7, 2017

/s/ Deborah Barnes
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.soc sec\scarborough0146

14